By the Court.

The appellants, plaintiffs in the Parish Court from whence this-appeial is brought, \. . - . . . . , „ , instituted the» action against the appellees, to *312 recover from them 8 557, 95 cents ; their petition contains two counts, one to > recover the sum of money above stated, as being the amount which the appellees are liable to pay to them on aceount Gf a general average on the ship Remittance of which they state themselves to have , . , . been agents and consignees \ the other to recover a transaction, or compromise, made between parties previous to the commencement of this k ⅜ SUd» s
and her discharged the KaSeeifor snip.
Arbitrators roost be sworn.
East. District.
June 1814.
rpHE facts in the case relating to the appellants' claim against the appellees, for their proportion of a general contribution, are the following: ‘‘The ship was bound on a voyage from the port of New-Qrleans to Liverpool, the appellees had shipped on board of her 300 bales of cotton. The vessel, on a Certain day, not ascertained in the ptóadings, proceeded on her voyage; but before she got out of the Mississippi, was turned back by the officers of the customs, in consequence of an embargo act passed by -the legislature of the United States. ’Upon the expiration of that act she again proceeded on her said voyage ; but was still in- the Mississippi, when the declaration of war by the United States against Great-Britain» reached New-Orleans, On this occurrence, the appellees and other shippers of property, on board of said vessel, requested of the appellants, that the shipi should be stopped from proceeding on, her voyage and that she should return to Ne\y-Orleans *313 in consequence of this request, the vessel was brought back and discharged her cargo.”
On these facts the first question for the decision of the court, is to determine whether or not, the appellees are bound to cóntribute to the payment of the expences incurred by the appellants on account of the vessel, as in cases of general average.
This leads us to enquire into the effects of an embargo or- detention of a ship by the orders of a sovereign powet1, in cases like the present, and was there no other circumstance in this case, except the embargo, there would be no great difficulty in settling the point : it having been decided^ in several of the state courts of the United States that the expences occasioned by the detention of vessels, in consequence of embargo or orders of a sovereign power, are not to be brought into general average ; and certainly this court cannot take for their guide, in cases suchas the one now under discussion, other rules than the decisions of enlightened tribunals, belonging to the same sovereignty, tinless they should be found' to be in opposition to some absolute and positive law, according to the provisions of which it may conceive itself bound to administer justice.
That the expences, stated by the appellants in the present suit, do not form a subject of general *314 contribution, when they ¡arise out of an embargo. . " ■ * ¾ * has been decided in the Supreme Court of the state of New-York, in the case of Penny & al. vs .the New-York Insurance Company, reported in 3 Caines’ New-York Term Reports, 155. The same decision is to be found of the Supreme Court of Pennsylvania, in the case of Jones vs. the Insurance Company of North America, & Kingston vs. Girard, reported in 4 Dallas, 246 & 274. In the Ordinance of Bilbao, chap. 20, no. 18 & 19, two different rules aré laid down, when the freight is adjusted and settled by the month, and the other when it is not: in the latter case, which is similar to the one before the court, the expences of the vessel occasioned by an embargo do not enter into gross average, but must be borne by the owners.
But so various and diversified are the transactions of men and occurrences of human life, that it is almost impossible to find two cases precisely alike. The ship, concerning which the present contest originates, was first stopped and detained in consequence of the embargo law; afterwards she was brought from the Balize to New-Orleans, the port in which she was laden, in consequence of the declaration of war, by the United States against Great-Britain, to one of the ports of which empire she was destined to sail. The return of the vessel, to the port from *315 whence she had cleared out, was effected, at the request of the shippers, and by the consent of the appellants'and master. Had the ship been suffered to proceed on her voyage, to the port of the enemy, after the parties had received knowledge-of the declaration of war, this woukl have been in violation of the general principle of the law of nations which interdicts all commercial intercourse between the citizens or subjects of states at war with each other ; none can be lawfully carried on except by the special permission of the belligerent sovereigns. This state of war, happening after a contract has been made for carrying merchandise, and the port to which the ship was destined belonging to the sovereign or state against whom war has been declared by that from which she is about to sail, dissolves the contract, and the merchant must unlade his goods and the owners find other employment for their ship. This rule is laid down in Ahbost on shipping 455,as clear and certain ; if war takes place before tire commencement of the voyage, the same author states it as probable that the same principle would apply to the samo event, happening after the commencement and before the completion of the voyage, altho’ a different rule is established in* such cases by the French ordinance. On examining this' ordinance it is found, to apply to vessels actually en route, on their voyage, and ought perhaps to be confined to cases, where they have actuallv.gonq *316 without the jurisdictional limits of the countrv ' , from whence they sailed*
In the present case the ship had not left the mouth 0f the river, she was not compelled by any force to return, but was brought back by the consent of all parties concerned in the transaction : which Seems to amount to a dissolution of the contract by the act of the parties themselves or at least leaves the affairs of the ship to be governed by the same rules, which would have been binding in the case, had she been found by the declaration of war in the lading port. If so, the contract for conveying the property may be considered as having ceased, from the time the declaration of war was known.
In all occurrences, which produce in a nation general calamities and sufferings, without any criminality on the part of any particular individuals, it appears just, that each member of the society should bear that portion of them which may fall ■ to his share. War, however just and necessary it may be, is properly considered as one of those evils which are for the most part general in their operation : and when it happens, every one must bear the inconveniences it brings upon him ; the shipper suffers from losing the benefit of a market for his merchandise, the ship-owner, the profit arising from freight. In the case before the court it can *317 not be admitted that the expences of the vessel which accrued previous to' the embargo and declaration of war were laid out for the benefit of the shippers in any way whatever ; but, as observed by the coun-, sel for the appellees, entirely for things indispensably necessary to enable her to make the intended voyage, and ought not to be considered as coming within any of the rules, relating to general average. With regard to the item in the account annexed to the appellants’ petition, relative to the repressing of the-cotton, it can surely form no part of an estimate in a gross average, but one or other of the parties, shipper or owner, must Sustain ths whole ex pence, according to special agreement or the custom of this port. '
The appellants have no right to teco ver on the second count in the petition, as on account of a transaction or agreement between the parties ; the evidence in the cause does not prove any agreement of this kind : but if they have any j ust pretentions to obtain judgment in their favor On this count, it must be *as on a compromise, as called in the Civil Code, which is a submission to and award of arbitrators.
In'the Code, there are many general rules laid down on this subject. Two important ones afnong them are those, I. the power of the arbitrators does not extend to things which are not included,-in the compromise, 2. they ought to be sworn. Now, *318 in applying these rules- to the present ease, it appears that a general question was submitted to a committee of the Chamber of Commerce appointed by its President, and by their determination of this general question, it is contended that the appellees have been properly condemned to pay the debt claimed by tlte appellants. So far from this being binding on tlte appellees, it is seen that the cause of action, between the parties, has never been specifically submitted nor determined on by tlte arbitrators. They ought to have been sworn. They have not been. The court is of. «pinion that the appellees have no right to recover on either count in the petition, and does, therefore, order and decree that the judgment of the parish court for the parish and city of New-Orleans, in this case, be affirmed with costs.